Seymour H. WEISS, Plaintiff,

v.

CNA (Continental Casualty Company, a subsidiary of CNA), Defendant (two cases).

Civ. A. Nos. 77–1294, 77–1295.

United States District Court,
W. D. Pennsylvania.

April 24, 1979.

Samuel J. Goldstein, Pittsburgh, Pa., for plaintiff.

Charles W. Kenrich, Pittsburgh, Pa., for defendant.

## MEMORANDUM

McCUNE, District Judge.

Plaintiff, Seymour H. Weiss, brings these actions in assumpsit to recover medical benefits allegedly due under the terms of two medical insurance certificates issued by Continental Casualty Company, a subsidiary of CNA. These diversity actions are before us on cross-motions for summary judgment. We ordered consolidation pursuant to Rule 42 of the Federal Rules of Civil Procedure.

Seymour Weiss and his wife were covered by two Continental Casualty group medical policies, one issued to the Zionist Organization of America Trust and the other to B'nai B'rith. Plaintiff received certificates of insurance from Continental Casualty which detailed the extent of coverage under each of the policies. The Zionist certificate contained a $15,000 deductible clause and the B'nai B'rith certificate contained a $20,000 deductible clause. Both certificates, and the corresponding group policies, also contained the following clauses:

### EXCLUSIONS AND REDUCTIONS

The policy does not cover any loss caused by or resulting from . . . care or treatment of the Insured Person to the extent that benefits are paid or payable therefore under Title XVIII of the Social Security Act as enacted in 1965 and entitled 'Health Insurance for the Aged' or as subsequently amended . . .

### CO–ORDINATION OF BENEFITS

[T]his Plan's benefits shall be reduced so that its reduced benefits, plus all benefits payable under all other Plans for those same expenses, equal the total of those expenses.

Plaintiff seeks to recover approximately $25,000 in medical costs incurred during an illness of his wife prior to her death. Plaintiff admits, however, that all of the medical costs have been paid by Medicare and Blue Cross/Blue Shield with the exception of $407.00 and certain nurses' charges. Plaintiff further admits that all or part of the excepted amount may have been paid by other insurance plans.[1]

---

1. Plaintiff's answer to defendant's interrogatory states: "Medicare, Blue Cross/Blue Shield paid all hospital, doctor, Medical Supply Service and Gold Cross Ambulance bills except $372.00 paid to McKeesport Hospital and $35.00 paid to Dr. Sperling . . . and bills for nursing . . . . All or some of said $372.00 McKeesport Hospital, $35.00 Dr. Sperling and nurses' charges may have been paid in full or in part by other policies with the amounts of payments as follows:

Defendant contends that plaintiff is not entitled to reimbursement under its medical plans for costs which have already been paid by other insurance carriers. Relying on the exclusion and coordination of benefits clauses quoted above, defendant moves for summary judgment in its favor.

Plaintiff also moves for summary judgment in his favor. In a brief supporting his motion, plaintiff contends that he is entitled to recover the entire amount of his wife's medical costs according to the coverage clauses of the certificates and is not bound by the deductible, exclusion, or coordination of benefits clauses thereof. The insured is not bound by these clauses, plaintiff asserts, unless the insurer proves that the insured was aware of these limitations and the effect of the limitations was explained to him. Plaintiff also asserts that these clauses are unconscionable, ambiguous, and against public policy.

■ Under Pennsylvania law,[2] insurance contracts have been considered contracts of adhesion. Ordinarily, disputes as to such contracts are strictly construed against the insurer. *Hionis v. Northern Mutual Insurance Company*, 230 Pa.Super. 511, 327 A.2d 363 (1974); *Eastcoast Equipment Company v. Maryland Casualty Company*, 207 Pa.Super. 383, 218 A.2d 91 (1966).

■ When an insurer refuses payment based on an exclusion or limitation contained in a policy, his defense is an affirmative one. *Weissman v. Prashker*, 405 Pa. 226, 175 A.2d 63 (1961). Ordinarily, the insurer must establish the applicability of an exclusionary provision by proving that the "insured was aware of the exclusion or limitation and that the effect thereof was explained to him." *Hionis, supra*, 230 Pa. Super. at 517, 327 A.2d at 365.

This policy of strict construction against the insurer has been established because the insurer ordinarily prepares the policy for a purchaser who has no bargaining power and who must take it or leave it. Usually, the

insured is concerned only with monetary benefits and places little emphasis on definitional clauses and exclusions. *Hionis, supra*, 230 Pa.Super. at 517, 327 A.2d 363.

In the present case, however, plaintiff obtained insurance through group policies issued to organizations. These organizations generally have more bargaining power than an individual has in negotiating for insurance coverage. The individual tends to rely on the organization to obtain the best coverage. Therefore, the need to protect the individual purchaser from overreaching by an insurance company is minimized. *Hammel v. Equitable Life Assurance Society of the United States*, Civil Action No. 77–1378 (W.D.Pa. August 9, 1978).

At the time plaintiff enrolled in the B'nai B'rith excess medical plan, he was insured under two other health plans. When plaintiff enrolled in the Zionist excess major medical plan, he also had Blue Cross/Blue Shield and Medicare. His wife was also entitled to Medicare coverage. Purchasing an excess health plan under these circumstances evidences the intention to expand coverage rather than duplicate it. *See Miller v. Prudential Insurance Company of America*, 239 Pa.Super. 467, 362 A.2d 1017 (1976).

Plaintiff was a lawyer when he first applied for the medical plans and when he received the certificates of insurance. The enrollment forms which plaintiff signed clearly indicate that he was applying for "EXCESS" medical plans. Furthermore, the advertising brochures which customarily accompany such enrollment forms contain language sufficient to put plaintiff on notice that the certificates and group policies would contain certain exclusionary and coordination of benefits clauses.

Plaintiff, we repeat, received two certificates evidencing coverage under the group policies. These certificates of insurance contained a clause excluding losses paid un-

---

1. CNA                    $1,875.36
2. World Insurance Company     1,303.32
3. Paul Revere Life Insurance Co.    5,090.00
4. American Family Life Insurance Co.   3,594.00"

2. Since diversity jurisdiction is invoked, we are controlled by Pennsylvania substantive law.

der Social Security Act (Health Insurance for the Aged) and also contained a coordination of benefits clause excluding losses paid by other medical plans. Plaintiff alleges that these clauses are ambiguous on their faces. We find, however, the clauses to be sufficiently clear and unambiguous to inform plaintiff that he might not have been entitled to a double recovery on his or his spouse's medical expenses.

■ Since plaintiff admits that he recovered all or nearly all of the medical costs from other sources, defendant moves for summary judgment in its favor on the basis of the clauses in the certificates and the policies themselves which limit a payment when medical expenses have already been paid by other insurers. A similar situation confronted the Superior Court in *Miller v. Prudential Insurance Co., supra,* where the insurance company's defense relied on the policy's coordination of benefits clause. The court stated:

"Because the appellant has already received full compensation for his medical expenses, it would be inequitable to require Prudential to demonstrate affirmatively that the insured was aware of the exception and had its effects explained to him. Under the circumstances of this case, such knowledge should be imputed to the appellant."

*Id.* 239 Pa.Super. 467 at 362 A.2d 1021. In light of *Miller,* we conclude that Continental Casualty Company need not prove affirmatively that plaintiff was aware of the limitations contained in the certificates and group policies.

■ Plaintiff also contends that the exceptions to payment asserted by the defendant should not be enforced because they are against public policy. The Pennsylvania Department of Insurance, however, specifically allows the use of the clauses in question:

"The following is a list of the maximum applicable exclusions which shall be permitted  .  .  . :

.  .  . Sickness or injuries to the extent that any covered person under the policy is indemnified by 'Medicare' for the expenses incurred. This exclusion may include other specifically enumerated national, state or other governmental plans." 31 Pa.Code § 89.77.

"*Coordination with other plans.* Nonduplication or coordination of benefit provisions for group medical expense insurance coverages may provide for nonduplication or coordination with any plan or State or Federal program providing benefits or services for or by reason of medical or dental care and treatment which benefits or services are provided by group insurance or any other arrangement of coverage of persons in a group whether on an insured or uninsured basis." 31 Pa.Code § 89.97.

We read these regulations and the court's analysis in *Miller* as evidencing a public policy favoring the use of these clauses to prevent overinsurance and avoid bonus recoveries.

Defendant, therefore, is entitled to an interlocutory summary adjudication to the extent plaintiff admits prior reimbursement from Medicare and Blue Cross/Blue Shield or other insurance plans. As to the amounts which have not been paid by other insurance plans, the plaintiff might recover. In an effort to determine the amount due plaintiff, he may file affidavits and supporting material within 15 days. The defendant may oppose the material supplied within the following 15 days in the event plaintiff's claim is not conceded.

An order follows.