**ALLEGHENY LUDLUM INDUSTRIES, INC., Plaintiff,**

v.

**LLOYD'S LONDON, consisting of a group of Underwriting Members, one of whom is Henry Ralph Rokeby-Johnson, and the Dominion Insurance Company Limited, Excess Insurance Company Limited, Minster Insurance Company Limited (Per Heywood and Partners Ltd.) the World Auxiliary Insurance Corporation Limited, and the Orion Insurance Company Limited, Defendants.**

**Civ. A. No. 77–1118.**

United States District Court,
W. D. Pennsylvania,
Civil Division.

June 11, 1979.

James D. Morton, Pittsburgh, Pa., for plaintiff.

Robert E. Wayman, Pittsburgh, Pa., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

SIMMONS, District Judge.

### FINDINGS OF FACT

1. A Memorandum of Insurance dated May 2, 1968, No. L5967, was issued to Allegheny Ludlum Steel Corporation.

2. The "underwriters at Lloyd's" referred to in said Memorandum of Insurance have consented to Henry Ralph Rokeby-Johnson being the defendant of record in this suit.

3. A Lloyd's Policy No. CU–8829 in which Allegheny Ludlum Steel Corporation was the assured was issued by certain Underwriting Members of Lloyds, including Henry Ralph Rokeby-Johnson.

4. A Memorandum of Insurance dated May 2, 1968, No. C5967, was issued to Allegheny Ludlum Steel Corporation.

5. "Insurers—Various Companies" referred to in said Memorandum of Insurance includes the following named defendants in the suit:

> The Dominion Insurance Company, Limited
>
> Excess Insurance Company Limited
>
> Minster Insurance Company Limited (Per Heywood and Partners Ltd.)
>
> The World Auxiliary Insurance Corporation Limited
>
> The Orion Insurance Company Limited

6. Each of the following named defendants is the insurer for Policy No. CU–8829, wherein the assured is Allegheny Ludlum Steel Corporation:

> The Dominion Insurance Company, Limited
>
> Excess Insurance Company Limited
>
> Minster Insurance Company Limited (Per Heywood and Partners Ltd.)
>
> The World Auxiliary Insurance Corporation Limited
>
> The Orion Insurance Company Limited

7. The name of Allegheny Ludlum Steel Corporation was changed to Allegheny Ludlum Industries, Inc. on April 14, 1970.

8. Joseph Kraft, an employee of Allegheny Ludlum was injured on September 9, 1968, when a grinding wheel which he was using exploded.

9. Joseph Kraft filed suit in the Supreme Court, Chautauqua County, New

York State against the Carborundum Company, and the Black & Decker Manufacturing Company. The Carborundum Company joined Allegheny Ludlum as a third-party-defendant.

10. Following a jury trial in 1975, the jury returned a verdict of $325,000 against the Carborundum Company and found that Allegheny Ludlum was 40% negligent and awarded a judgment for Carborundum against Allegheny Ludlum for $130,000, together with costs and interest.

11. Allegheny Ludlum has paid the judgment in full and interest thereon, the total sum being $146,526.50.

12. The legal fees incurred and paid by Allegheny in defending the Kraft suit, paid to the firm of Jaeckle, Fleishmann & Mugel was $30,941. (See deposition of J. Edmund DeCastro and Exhibit "9").

13. Other expenses incurred by Allegheny in connection with the defense in the Kraft suit were $6,504.64, consisting of the following items:

Court Reporters
| | | |
|---|---|---|
| Jack W. Hunt | $ | 132.00 |
| Carmen S. DePaolo | | 100.00 |
| Martin Wright | | 1,792.65 |
| Expert Witness Consultation | | |
| Cyril H. Wecht, M.D. | | |
| Consultation | | 600.00 |
| Trial Testimony and expenses | | 1,283.87 |
| Batavia Times Publishing Co. | | |
| Printing Brief | | 2,596.12 |
| | | $6,504.64 |

14. Although under the Memorandum of Insurance and the Policies, the defendants were required to pay the judgment, costs, expenses and attorneys' fees incurred in the Kraft suit, they have refused to do so.

15. Defendants knew and recognized that they were required and obligated to pay the judgment, costs, expenses and attorneys' fees incurred in the Kraft suit, as evidenced by the letter of January 30, 1974, from Mendes & Mount, their agents (Stipulated Ex. No. 8), wherein a reserve of $75,000 is recommended and it is stated:

> Irrespective of Underwriters' understanding that the underlying covers were to have concluded Employers Liability cover, the fact is that there was no such cover for New York.

We attach copies of the "schedules" appended to the policy submitted to this office. Note that the Employers Liability cover for New York is apparently limited to Occupational Diseases.

The underlying general liability policy excluded cover for bodily injuries of employees save for liability assumed under contract. There is no contract here involved, and the third party complaint filed against the assured is not grounded in a contractual theory of recovery.

We have also examined the Travelers' policy, covering New York excess Workmen's Compensations, and same, clearly carries no clause 1–B or comparable Employers Liability cover.

16. Marsh & McLennan, through Mendes & Mount, advised the defendants that the policies in suit provided coverage and there is no underlying policies which were applicable to any of the exclusions. (See Plaintiff's Exhibit No. 12)

## CONCLUSIONS OF LAW

1. This Court has jurisdiction because there is diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $10,000. (See Pre-Trial Stipulation Item II).

2. This non-jury case involves interpretation of an insurance policy, which is a question of law for the Court. *Adelman v. State Farm Mut. Auto. Ins. Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978); *Pfeiffer v. Grocers Mutual Ins. Co.*, 251 Pa.Super. 1, 379 A.2d 118 (1977).

3. In determining this question of law, the following principles are controlling:

a) Court cannot rewrite an insurance policy or give them an interpretation in conflict with the accepted and plain meaning of the language used.

b) A provision in an insurance policy is ambiguous only if reasonable intelligent men, on considering it in the context of the entire policy, would honestly differ as to its meaning.

c) If it is determined that the language of a policy is ambiguous, obscure, uncertain or susceptible to more than one interpretation, the language must be construed most strongly against the insurer and most favorable to the insured. (Ibid)

4. An insurance policy must be read in its entirety; it should be construed according to the plain meaning of the words used, so as to avoid ambiguity while at the same time giving effect to all of its provision. *Blocker v. Aetna Casualty*, 232 Pa.Super. 111, 332 A.2d 476 (1975).

5. The Memoranda of Insurance, which were in effect on the date of the accident on September 9, 1968, are binding on the defendant Underwriters. *Steelnack v. Knights Life Ins. Co. of America*, 423 Pa. 205, 223 A.2d 734 (1966); *Harris v. Meyers*, 160 Pa.Super. 607, 52 A.2d 375 (1947); also see *Serventi v. New York Fire Ins. Co.*, 253 F.Supp. 670 (W.D.Pa.1966).

6. As to the extent of coverage, the Memoranda of Insurance provide coverage for all "liability imposed upon the insured by law or assumed . . . on account of personal injuries . . . caused by or arising out of each occurrence happening during the policy period anywhere in the world".

7. The Memorandum on Page 1 specifically provided:

"This policy also extends to cover Employers Liability and/or Employers Liability with respect to Occupational Disease".

8. The two policies involved, although issued after September 1968, provided coverage from April 1, 1968.

9. The judgment paid by Allegheny Ludlum Industries, Inc., the plaintiff, in the total amount of $146,526.50, in the suit of *Joseph Kraft v. Carborundum Company, et al.*, in the Supreme Court, New York State, Chautauqua County, comes within the coverage of the Memoranda and Insurance Policies.

10. The limit of insurance was $1,000,-000.00, per occurrence and was to pay the excess of either:

"1) the limits of underlying insurance as per schedule or

2) $25,000 each occurrence where no concurrent insurance."

11. The Schedule of Underlying insurance referred to contained no exclusion applicable to this case.

12. The only exclusion applicable was the $25,000 where no concurrent insurance.

13. There is no ambiguity in the Memoranda of Insurance or in the Policies. They make a clear distinction between Employer's Liability and Workmen's Compensation. The Liability incurred by plaintiff was not a Workmen's Compensation Liability.

14. Under the law, exceptions to coverage must be strictly construed against the insurer. *Miller v. Prudential Ins.*, 239 Pa.Super. 467, 362 A.2d 1017 (1976).

15. Defendants under the Memoranda and Policies are required to pay plaintiff the judgment paid by it plus costs, expenses and attorneys' fees incurred in defending the *Kraft* suit.

16. Judgment shall be entered for plaintiff.

A. Judgment paid in *Kraft* suit — $146,526.50

B. Costs and expenses incurred in defending the *Kraft* suit:
1. Attorneys' fees — $32,941.00
2. Other expenses — 6,504.64

39,445.64

17. The final judgment will give credit for the $25,000 exclusion provided for in the Memoranda and Policies and award interest on Items A and B from the date of payment by Allegheny Ludlum Industries.

### ORDER

Judgment is entered in favor of Allegheny Ludlum Industries, Inc., for the following amounts:

Judgment paid in suit of *Joseph Kraft* v. Carborundum Company, et al., in Supreme Court, New York State Chautauqua County — $146,526.50

Legal fees incurred in defense of *Kraft* suit. — 32,941.44

Other expenses incurred in defense of the *Kraft* suit. — 6,504.64

$185,972.58

Interest on each of the items from the date of payment to April 15, 1979 totals — 22,654.46

TOTAL — $208,627.04

The Memoranda and Policies provide a deductible of — 25,000.00

TOTAL NET — $183,627.04

Judgment for the above amount of $183,627.04 is entered in favor of Allegheny Ludlum Industries and against each of the Defendants as follows:

A. Lloyd's of London, consisting of a group of Underwriting Members, one of whom is Henry Ralph Rokeby-Johnson — 55.25% of the total amount of the judgment, i. e. $101,453.94

and

B. The Dominion Insurance Company, Limited, Excess Insurance Company Limited, Minster Insurance Company Limited (per Heywood and Partners Ltd.) The World Auxiliary Insurance Corporation Limited, and The Orion Insurance Company, Limited — 44.75% of the total amount of the judgment, i. e. $82,173.10

Interest shall be added to the rate of six (6%) per cent per annum from April 15, 1979 to date of payment and shall be allocated among the defendants in accordance with the foregoing percentages.