*349 OPINION
SMITH, Circuit Judge.
In this declaratory judgment action, the District Court held that appellant Coun-tryway Insurance Co. (“Countryway”) had a duty to defend its insured, Paul Slaugen-houp, in a negligence lawsuit brought by Dustin C. Sams (“Sams”) against Paul and his father, Walter Slaugenhoup.[1] Coun-tryway appeals. We will reverse.
I.
Paul Slaugenhoup was the owner of a farmowner’s insurance policy issued by Countryway. His policy provided personal liability coverage, under which Country-way agreed to defend Paul in lawsuits seeking damages for bodily injury or property damage, provided that coverage was not otherwise excluded by the policy.
Paul and his father Walter were joint owners of a combine used on the Slaugen-houp farm. On July 17, 2006, Paul and Walter set out to repair a tire on their combine. Paul removed the tire, loaded it onto Walter’s pickup truck, and told his father to “go get her fixed.” Walter was 93 years old, had a history of glaucoma, and was not wearing his glasses despite a driver’s license requirement that he wear corrective lenses when operating a motor vehicle. As Walter drove to get the tire fixed, his vehicle collided with Sams’s vehicle. Sams was severely injured.
Through his guardian, Sams filed a two-count complaint against the Slaugenhoups in the Court of Common Pleas for Clarion County, Pennsylvania. Count I alleged that Walter operated his motor vehicle negligently. Count II alleged that Paul was negligent under § 302 of the Restatement (Second) of Torts, whieh provides that “an act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.” According to Sams, Paul was negligent when he placed the tire in Walter’s pickup truck and asked Walter to transport the tire for repair, knowing that his father was incapable of driving safely.
On November 21, 2007, Countryway filed a declaratory judgment action pursuant to 28 U.S.C. § 2201 in the United States District Court for the Western District of Pennsylvania.[2] Countryway sought a declaration that it had no duty to defend or indemnify Paul in the negligence action brought by Sams, because Exclusion 1(f) of Paul’s policy excluded coverage for that claim. The District Court held that Countryway had a duty to defend Paul under the policy, and granted summary judgment for the Slaugenhoups and Sams. Countryway filed this timely appeal.[3]
II.
This Court exercises plenary review over the District Court’s grant of summary judgment. Camiolo v. State Farm, 334 F.3d 345, 354 (3d Cir.2003). Furthermore, the interpretation of an insurance exclusion is a question of law, over which this Court exercises plenary review. Canal Ins. Co. v. Underwriters at Lloyd’s London, 435 F.3d 431, 434 (3d Cir.2006). The parties agree that Pennsylvania substantive law applies.
*350 III.
Paul Slaugenhoup’s policy provided personal liability coverage (“coverage L”), subject to certain exclusions. Exclusion 1(f), the only exclusion at issue in this appeal, states that coverage L does not apply to:
“bodily injury” or “property damage” which results from liability imposed by law on an “insured” for the use of a “motorized vehicle,” aircraft, or watercraft, except if coverage is provided for by an Incidental Motorized Vehicle or Watercraft Coverage.[4]
The District Court found this exclusion ambiguous, and therefore interpreted it in favor of coverage. The District Court offered three reasons for its conclusion that Exclusion 1(f) was ambiguous. First, it thought it unclear whether Paul “used” the pickup truck involved in the accident, since he neither owned nor operated it at any time relevant to the accident. Second, the District Court believed that the policy was unclear as to whose “use” of a vehicle would trigger the exclusion, and whether the exclusion applied in cases of vehicle use by anyone other than the insured. Third, the District Court distinguished Exclusion 1(f) from the exclusions in other cases in which Pennsylvania courts had applied motor vehicle exclusions in general liability policies. See Wilcha v. Nationwide Mut. Fire Ins. Co., 887 A.2d 1254 (Pa.Super.Ct.2005); Erie Ins. Exch. v. Transamerica Ins. Co., 352 Pa.Super. 78, 507 A.2d 389 (1986); Pulleyn v. Cavalier Ins. Corp., 351 Pa.Super. 347, 505 A.2d 1016 (1986). The Court pointed out that the exclusions applied in Wilcha, Erie, and Pulleyn excluded coverage for bodily injury “arising from” or “arising out of’ motor vehicle use, while the Countryway exclusion contained no such “arising from” language. The District Court held that the absence of such language contributed to the policy’s ambiguity.
The District Court was correct that under Pennsylvania law, ambiguities in an insurance policy are to be construed against the insurer. 401 Fourth St., Inc. v. Investors Ins. Group., 583 Pa. 445, 879 A.2d 166, 171 (2005). That rule is inapplicable here, however, because Exclusion 1(f) is not ambiguous.
The District Court erred in asking as a threshold question whether Paul Slaugen-houp used a motor vehicle. The Court should have first asked whether the exclusion even required that the insured “use” the motorized vehicle. In our view, it does not. Exclusion 1(f) states that the policy does not provide coverage for bodily injury resulting from (1) liability imposed by law (2) on an insured (3) “for the use of a motorized vehicle.” All three of those requirements are met here. The Sams negligence action sought to (1) impose liability through law (2) on Paul, the insured (3) “for the use” of the pickup truck. The “use” in question, of course, was Walter’s use of his pickup truck to transport the tire, which resulted in the accident and without which Sams would have no claim against Paul. As Countryway notes, the operative word in the exclusion is “use.” Walter was using a motor vehicle when he struck and injured Sams, and that use was sufficient to trigger Exclusion 1(f). Nothing in the policy states that Exclusion 1(f) applies only to Paul’s use of a vehicle. Because there is no need to decide whether Paul used the pickup, one of the chief sources of ambiguity identified by the District Court vanishes.
The District Court correctly noted that “the policy language begs the question of *351 who must be using the vehicle in order for coverage to be excluded.” The Court thought that the policy’s failure to identify whose use of a vehicle would trigger the exclusion also suggested that the exclusion is ambiguous. We disagree. A more natural reading of the policy is that Country-way did not identify a specific person whose vehicle use would trigger the exclusion because it did not intend to limit the exclusion based on the identity of the user. Rather, it meant to exclude all coverage for liability imposed by law as the result of motor vehicle use — by anyone. See, e.g., Hanson v. North Star Mut. Ins. Co., 71 F.Supp.2d 1007, 1014 (D.S.D.1999) (interpreting nearly identical motor vehicle exclusion to exclude coverage, when the insured loaned an ATV to a young woman whose use of the ATV resulted in injuries and led to a lawsuit against the insured).
The District Court’s analysis effectively rewrites the policy to exclude “bodily injury ... which results from liability imposed by law on an insured for the use of a motorized vehicle by the insured.” The exclusion could have been written to say just that, but it was not. Notably, other exclusions in the policy are explicitly limited to the actions of the insured, while Exclusion 1(f) is not. For example, Exclusion 1(c) excludes coverage for “bodily injury ... which results from the ownership, operation, maintenance, [or] use ... of motorized vehicles ... owned or operated by or rented to or loaned to an insured ” (emphasis added). Similarly, Exclusion l(j) applies to “bodily injury ... which is expected by, directed by, or intended by the insured; or that is the result of intentional and malicious acts of the insured ” (emphasis added).
Clearly, Countryway knew how to limit an exclusion to the actions of the insured when it intended to do so. The presence of such limiting language in other exclusions, coupled with its absence from Exclusion 1(f), demonstrates that Exclusion 1(f) was not intended to be so limited. Reading the phrase “by the insured” into Exclusion 1(f) would be inconsistent with Pennsylvania law, which honors the intent of the parties evidenced by the language of the contract. See, e.g., Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999) (where “the language of a contract is clear and unambiguous, a court is required to give effect to that language ... [and must not] distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity”).[5]
Attempting to escape the plain language of Exclusion 1(f), Sams insists that his negligence claim against Paul is not connected to any “use” of a motor vehicle. Sams emphasizes that he has not asserted claims against Paul for vicarious liability, negligent entrustment, or negligent supervision of Walter’s use of the pickup. Instead, he limits his negligence allegations against Paul to two specific acts: placing the tire in Walter’s truck, and requesting Walter to drive the tire for repair. Neither of those acts, Sams argues, implicates the use of a motor vehicle, and therefore neither falls within the exclusion.
Pennsylvania courts interpreting motor vehicle exclusions have faced similar argu *352 ments in negligent entrustment cases, and have consistently rejected attempts to divorce allegations of negligent entrustment from the excluded “use” of a vehicle that actually causes the plaintiffs injuries. See, e.g., Pulleyn, 505 A.2d at 1020. In Pulleyn, a man driving his employers’ vehicle crashed into another vehicle and killed two of the passengers. The victims’ family sued the employers for negligent entrustment of their vehicle. The issue was whether the employers’ insurer was required to defend them in light of the motor vehicle exclusion in their liability policy, which excluded “bodily injury or property damage arising out of the ownership ... operation, [or] use ... of any other automobile or aircraft operated by any person in the course of his employment by any insured.” Id. at 1018. The victims argued that this exclusion did not preclude coverage for their negligent entrustment claim because the entrustment was separate and distinct from the use of the vehicle that had caused their injury. The court rejected that distinction and held that the policy excluded coverage for the negligent entrustment claim, because “liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner resulting in injury.” Id. at 1020 (quoting Mich. Mut. Ins. Co. v. Sunstrum, 111 Mich.App. 98, 315 N.W.2d 154, 157 (1981)). It was not the entrustment of the vehicle to the employee, the court reasoned, but the employee’s use of the vehicle that gave rise to the insured’s alleged liability. Id. at 1020.
Other Pennsylvania cases involving motor vehicle exclusions have similarly rejected attempts to separate allegations of negligent entrustment from the use of the vehicle that caused injury. See, e.g., Erie, 507 A.2d at 394 (rejecting the view that “negligent entrustment of the automobile” is “separate from the use of the vehicle” and holding that motor vehicle exclusion in a homeowner’s policy excluded coverage for negligent entrustment claim); Wilcha, 887 A.2d at 1259 (holding that a homeowner’s policy excluding coverage for “bodily injury ... arising out of the ownership, maintenance, or use of a motor vehicle” owned or operated by an insured also excluded coverage for a negligent entrustment claim, because “the use of the vehicle [was] an integral part of the tort of negligent entrustment”).[6]
Admittedly, Pulleyn, Eñe, and Wilcha are distinguishable in that they involved allegations of negligent entrustment. Here, there is no allegation of negligent entrustment, nor could there be, since Walter was driving his own truck at the time of the accident. Nevertheless, we believe that the reasoning employed in those cases forecloses Sams’s attempts to separate his negligent delegation allegations from the use of the vehicle that actually gave rise to his claims. Here, Walter’s use of the pickup truck is “integral” to Sams’s allegations against Paul, Wilcha, 887 A.2d at 1259, just as the use of the vehicle was integral to the negligent entrustment claims in Pulleyn, Erie, and Wilcha. As in those cases, there could be no negligence claim against the insured but for someone’s — ie., Walter’s — “use” of a motor vehicle.
*353 IV.
An insurance policy is ambiguous “if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.” Hutchison v. Sunbeam Coal Co., 513 Pa. 192, 519 A.2d 385, 390 (1986). Exclusion 1(f) is not ambiguous. It excludes coverage for liability imposed by law resulting from the use of a motorized vehicle, regardless of whose use of the motor vehicle caused the bodily injury. Sams’s lawsuit clearly seeks to impose liability on Paul “for the use” of a motorized vehicle — specifically, the use of a pickup truck by Walter. Therefore, coverage is excluded, and Countryway has no duty to defend.
We will reverse the order of the District Court granting summary judgment for the Slaugenhoups and Sams. The case will be remanded, and the District Court is instructed to enter judgment in favor of Countryway.

.The father's name is Walter C. Slaugenhoup and the son's given name is Walter P. (Paul) Slaugenhoup. For ease of reference, we will refer to the father as "Walter" and the son as "Paul.”

. The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

. This Court has jurisdiction under 28 U.S.C. § 1291.

. The parties agree that no coverage is provided by an Incidental Motorized Vehicle or Watercraft Coverage.

. The District Court also overstated the significance of the absence of “arising from" language. It assigned great weight to the fact that, unlike the exclusions in Pulleyn, Erie, and Wilcha, the Country way exclusion did not contain the words "arising from” or "arising out of.” The District Court implied that the presence of those words in Pulleyn, Erie, and Wilcha was somehow central to those courts' analyses. It was not. None of those cases turned on the "arising from” language in the policies. The presence of "arising from” language may be sufficient for an insurer to effect a broad motor vehicle exclusion, but there is no suggestion in any of those cases that it is necessary to do so.

. Accord Bankert v. Threshermen's Mut. Ins. Co., 110 Wis.2d 469, 329 N.W.2d 150, 156 (1983). In Bankert, the court held that a homeowner's policy excluding coverage for the “ownership, operation, maintenance or use of automobiles while away from the insured premises” did not provide coverage for a negligent entrustment claim when the alleged negligence entrustment occurred on the premises but the injury occurred away from home. The court refused to separate the negligent entrustment from tire actual “use” that caused the injury, because “the parents' acts could not render them liable without their son's operation of the vehicle.” Id.